UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

Stephen Cugier, Sandra (Cugier) Katsoolis, Suzanne Cugier,
Plaintiffs,

vs.

Julie L. Cugier,
Defendant.

1:05-CV-1050-SEB-VSS

**ENTRY GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S RELATED MOTIONS IN OPPOSITION**

This case was brought by beneficiaries of a group life insurance policy. Stephen Cugier, Sandra (Cugier) Katsoolis, and Suzanne Cugier (hereinafter, collectively "Plaintiffs") are the natural children of James E. Cugier, who died in May, 2004 (hereinafter the "Decedent"). Defendant Julie Cugier ("Defendant") was Decedent's second wife. Now before the Court are multiple motions which rehash the same issues in various ways: Plaintiffs' Motion for Summary Judgment [Doc. No. 30]; Defendant Julie Cugier's Motion to Deny Motion for Summary Judgment [Doc. No. 43]; and Defendant Julie Cugier's Motion to Oppose Summary Judgment [Doc. No. 100].[1] Plaintiffs' Motion

[1] Defendant Julie Cugier's interests would have been better served by filing a response brief to Plaintiffs' motion in accordance with Local Rule 56 instead of complicating the docket by filing two independent motions in opposition. In the interest of justice, we consider the arguments made in Defendant's motions against Plaintiffs in conjunction with Plaintiffs' Motion for Summary Judgment. Were we not to consider these motions, there would exist a complete lack of response on the part of Defendant as relates to Plaintiff's motion, with the exception of
(continued...)

for Summary Judgment seeks not only a declaratory judgment that Plaintiffs are the rightful beneficiaries of the life insurance proceeds on deposit with the Court, but also an order mandating the immediate disbursement of said life insurance proceeds, together with interest, to Plaintiffs, and dismissal of Defendant's Cross-Claim and Counterclaim.[2] For the reasons detailed in this entry, we hold that Plaintiffs' Motion for Summary Judgment is well-taken and therefore GRANT summary judgment in Plaintiffs' favor and DENY Defendant's related motions in opposition.

Statement of Material Facts

James E. Cugier, who died in May, 2004, was an employee of General Motors Corporation ("GM"), working at the Allison Transmission Plant in Indianapolis, Indiana prior to his retirement. Compl. p. 2 ¶2. The Decedent was sixty-one years of age at the time of his death and had three children (who are the Plaintiffs in this action) from his first marriage. Compl. p.2 ¶ 3; Def.'s Ans. ¶ 3. At the time of his death, the Decedent had been married to Defendant Julie Cugier, his second wife, for about nine years.[3]

---

[1](...continued)
the three requests for extensions of time filed by Defendant, which we granted but which still failed to generate any subsequent filings by Defendant.

This entry also addresses two related motions to strike, Plaintiffs' Motion to Strike Affidavit in Support [Doc. No. 56] and Plaintiffs' Motion to Strike Affidavits of Larry Yoder and Wayna Marie Parker [Doc. No. 65].

[2] This motion for summary judgment is limited to the first cause of action in the Complaint. Further, upon review of the pleadings it is not clear what, if any, Cross-Claim and Counterclaim Defendant is asserting beyond Defendant's claim that she is entitled to the insurance proceeds.

[3] Both parties discuss the terms of the divorce Settlement Agreement between the
(continued...)

Compl. p.3 ¶4.

As part of his employment, the Decedent was insured by a group life insurance policy issued by Metropolitan Life ("MetLife")[4] covering employees of GM. Pls.' Memo in Supp. at 1. Specifically, the Decedent was a participant in a certain General Motors Life and Disability Benefits Program for Hourly Employees (the "Plan"). Comp. p. 3 ¶5. The Plan is regulated by the Employee Retirement Act of 1974, as amended ("ERISA") 29 U.S.C. § 1001-1461. Id. at ¶6.

The Plan provided the Decedent with life insurance benefits, payable to the beneficiary of record, as designated by the Deceased. Compl. at ¶8. "A beneficiary of record is defined in the Plan as the person or persons designated by the decedent to receive the benefits payable as a result of the decedent's death." Def.'s Memo in Supp. of Motion to Deny Summ. J. at 4; citing The Plan ¶ 12. The life insurance policy required the Decedent to execute a written "Beneficiary Designation Form" in order to name beneficiaries.[5] Pls.' Memo in Supp. of Summ. J. at 2, 4 (citing Def.'s Admissions to Pls.'

---

[3](...continued)
Decedent and his first wife. Arguably, the Settlement Agreement may have required the Decedent to maintain life insurance on behalf of his daughter Suzanne. We do not find these facts to be determinative.

[4] At all times relevant, Metropolitan Life ("MetLife") was the claim fiduciary for the Plan. Compl. at ¶ 7.

[5] Defendant argues that a person enrolled in the Plan as the insured could designate a new beneficiary by email and/or telephone. Def.'s Memo in Supp. of Denying Motion for Summary Judgment at 5; citing Exh. A, p. 7. However, this is not a material fact because there is no evidence that the Decedent ever used email or telephone communications to change his beneficiaries. For example, phone records from MetLife do not reveal any attempt by decedent
(continued...)

Request for Admissions, identifying Exhs. A, B, C, and D thereto).

In July 1996, Decedent executed a written Beneficiary Designation Form ("First Beneficiary Form"), naming his three children (Plaintiffs) as the primary beneficiaries and Defendant (then his fiancée), as a contingent beneficiary. Memo in Supp. of Summ. J. at 5, citing Beneficiary Designation Form, Exh. C to Memo in Supp.; Depo. of Def, p. 38; and Def.'s Ans. ¶5, and Counterclaim ¶ 9. Defendant admits that the signature and all of the handwriting on the July, 1996 Beneficiary Designation Form belongs to Decedent. Memo in Supp. of Summ. J. at 5; citing Def. Depo. p. 33-34.

Following the submission of the First Beneficiary Form, GM sent the Decedent a letter pointing out that the contingency interests allocated to a beneficiary needed to total one hundred percent (100%) and that the percent listed next to Julie Cugier, the only named contingent beneficiary, was 33 1/3 %. The letter stated:

> Enclosed is a new form we have completed based on the information you have supplied. . . . Please review the form and if correct, use a ball point pen to complete the highlight areas and insert the date and your signature at the bottom of the form and return it in the envelope provided. If this form is not completed and returned within 30 days, your previous beneficiary designation currently on file will remain in effect.

---

[5](...continued)
to make an oral change to his Beneficiary Designation Form. There are no records of phone calls from Decedent asking to change his designation of Plaintiffs as the primary beneficiaries. Pls.' Supp. of Evid. in Supp. of Motion for Summ. J. at 1-2 (Doc. No. 69) (citing Exh. A, telephone notes from MetLife's National Benefits Center). Similarly, no email communications between the Deceased and MetLife are on record.

[See Doc. No. 107-2].[6]

In October, 1996, after marrying Defendant, the Decedent completed a second Beneficiary Designation Form. Pls.' Memo in Supp. at 5; citing Exh. D; Def.'s Depo., p. 29-30; Def.'s Counterclaim ¶10. This second Beneficiary Designation Form is almost identical to the first Beneficiary Form in that it again names Plaintiffs as primary beneficiaries and Defendant as a contingent beneficiary. The main difference is that it lists the percentage in the contingent beneficiary section as 100% instead of 33 1/3 %. See Def.'s Motion to Oppose Summ. J. at 2. Defendant contends that the handwriting containing the names of the beneficiaries was written by someone other than Decedent.[7]

---

[6] Defendant refers to this August 20, 1996 letter as the "rejection letter." Def.'s Memo in Supp. of Denying Summ. J. at 4. The letter states, "We are sorry that we are unable to process your beneficiary form as received" because the contingent beneficiary must total 100% and not 33 1/3 %. We do not read this statement as a wholesale rejection of the First Beneficiary Designation Form. When the letter is read in its entirety, it is clear that GM is simply informing the Decedent that the contingent beneficiary must total 100% and if the enrollee, now Decedent, does not execute a new form, his clear intent as evidenced on the form to only give Julie Cugier 33 1/3 % of the proceeds if all of his primary beneficiaries were to die would be changed to give her the entire 100% contingency beneficiary interest.

[7] Defendant argues that her late husband's failure to fill out the entire form violated MetLife's policy which required the employee to fill out the beneficiary form. Def.'s Memo in Supp. of Denying Summ. J. at 6 (citing Letter from MetLife "Exh. C" to Supp. Aff. of Julie Cugier). This is not a material fact, however, because although the policy may have required the Decedent to fill out the entire form, his failure to do so does not void it altogether. This written form, which substantially complies with MetLife's policies and procedures (even with a technical flaw) is better evidence of the Decedent's intent than mere oral promises. However, Defendant's argument need not be mentioned at all because it relies on the Supporting Aff. of Julie Cugier which we determine must be stricken.

Plaintiffs filed the Motion to Strike Affidavit of Julie L. Cugier on December 12, 2005. Defendant Julie Cugier failed to file a response to this motion, and the time for doing so has long expired. According to the motion, the Affidavit of Julie L. Cugier: (a) was not timely or properly submitted, (b) was not properly executed in that it is not notarized, (c) contains numerous allegations which contradict Defendant's deposition testimony, and (d) is irrelevant as

(continued...)

Def.'s Depo., p. 30. Defendant admits, however, that the signature found on the second Beneficiary Designation Form is that of Decedent. Def.'s Depo. p. 29-30. The uncontroverted evidence in this case reveals that the Second Beneficiary Form was filled out by GM and signed by the Decedent.[8] Pls.' Reply Brief in Supp. of Summ. J. at 8; Doc. No. 107-2 (indicating that GM filled out the Second Beneficiary Form and was sending it to Decedent for his signature).

Following the death of the Decedent, Plaintiffs made a proper and timely claim against GM and MetLife demanding that the life insurance proceeds be disbursed to them as the named beneficiaries. Id. at 10. Thereafter, Defendant intervened and represented to GM and MetLife that there had been some type of fraud, forgery, or other wrongdoing involved in designating Plaintiffs as beneficiaries, which representation resulted in GM and MetLife refusal to disburse the life insurance proceeds to the Plaintiffs. Compl. at ¶

---

[7](...continued)
it fails to rebut the evidence contained in Plaintiffs' Motion for Summary Judgment. Accordingly, Plaintiffs' motion is GRANTED and the Affidavit of Julie L. Cugier is hereby STRICKEN.

[8] Defendant Cugier's theory seems to be that, in or around October 22, 1997, a new beneficiary form was submitted by Decedent James Cugier, or by Allison's Plant 8 on his behalf. It is this "new" form that Defendant Cugier believes names her as the primary beneficiary on both the basic life and optional life insurance policies. Def.'s Depo. 29-30. She contends that the later beneficiary designation form could have been stolen from the home of James Cugier. Def.'s Depo. 27.

Defendant Cugier admits that she never saw a beneficiary designation form naming her as the primary beneficiary. A party's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and moreover, which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

11. Defendant does not possess any documents supporting her claims that she is the proper beneficiary, nor has she ever seen any document identifying her as the primary beneficiary. Pls.' Memo in Supp. at 5; citing Def.'s Depo. at 65, 86. Defendant's claims to the life insurance proceeds are based solely on the alleged oral promises of Decedent to make her a primary beneficiary,[9] and the different handwriting regarding the beneficiaries

[9] Defendant also cites to the "testimony from others who discussed James Cugier's finances with them and belie[ve] that there was a change of beneficiary made after 1996." Def.'s Memo in Supp. of Denying Summ. J. at 5. Out of this argument arises Plaintiffs' Motion to Strike Affidavits of Larry Yoder and Wayna Marie Parker [Doc. No. 65]. Plaintiffs argue that the Affidavits of Larry Yoder ("Yoder") and Wayna Marie Parker ("Parker") are improper because they are replete with hearsay as to statements allegedly made by James Cugier, who is now deceased, and because they were filed after the briefing of Plaintiffs' Motion for Summary Judgment was complete. Pls.'s Motion to Strike Yoder and Parker Affs. at 1-2.

Defendant Julie Cugier responds that the affidavits were included within her Second Motion for Enlargement of Time to file Supplemental Responses to Motion for Summary Judgment in an effort to show the Court and counsel for Plaintiffs that she was acting in good faith in pursuing her claim that there is another beneficiary claim form. Def.'s Resp. to Motion to Strike Yoder and Parker Affs. at 1. Defendant argues that the statements made by Yoder and Parker, individuals with personal knowledge but no pecuniary or proprietary interest in the outcome of this case, constituted an exception to hearsay pursuant to Federal Rule of Evidence 803(3). Defendant Julie Cugier states that "[t]he affidavits were obtained to show the decedent's state of mind or his intent to make Julie, decedent's wife, the primary beneficiary of decedent's GM life insurance." Further, Defendant Cugier argues that the affidavits are relevant under Federal Rules of Evidence 401 because the affidavits are evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Defendant argues that "[a]ffidavits of witnesses' personal knowledge concerning decedent's intent to change the beneficiary of the GM policies is relevant." Def.'s Resp. to Motion to Strike Yoder and Parker at 2.

For the purposes of this summary judgment motion we find the affidavits of Yoder and Parker a valid exception to the hearsay rule under Fed. R. Evid. 803(3) because they purport to express the decedent's then existing state of mind, emotion, sensation, or physical condition. As discussed *infra*, any intent the Decendent had to change the beneficiary of the GM policies, which Defendant Julie Cugier argues is relevant, will not be determinative in this matter; however, any evidence of good faith on the part of Defendant Julie Cugier is refreshing in these proceedings and for this reason the affidavits will not be stricken. Accordingly, Plaintiffs' motion is DENIED and the Affidavits of Yoder and Parker will be considered for their very limited value in these motions.

appearing on the second Beneficiary Designation Form. Pls.' Memo in Supp. at 6; citing Def.'s Depo. p. 60, 61, and 64.

On September 13, 2005, MetLife deposited into the Registry of the Court $110,949, plus interest thereon, an amount representing the benefits and interest payable under the Plan as a result of the death of the Decedent. Upon said deposit, MetLife and GM were dismissed as parties to this action and released from any further liability or obligations under the Plan as related to the Decedent, James E. Cugier. See Stipulated Order of Deposit, Investment, and Dismissal, Doc. No. 19.

## Legal Analysis

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," Id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

**B. Plaintiffs Are Entitled to the Decedent's Life Insurance Proceeds**

Plaintiffs argue that Defendant's allegations lack the sufficiency required to challenge the validity of either the First or Second Beneficiary Designation Form completed by Decedent. Moreover, Plaintiffs argue that even if the Second Beneficiary Designation Form were somehow unenforceable, the First Beneficiary Designation Form, which undeniably names Plaintiffs as the primary beneficiaries, takes precedence.

Defendant argues that both the First Beneficiary Designation Form and the Second Beneficiary Designation Form would not be accepted by MetLife because both forms violated the policy's technical terms and therefore there was not a valid form on file. Def.'s Memo. in Supp. of Motion to Deny Summ. J. at 7. Specifically, Defendant argues that the First Beneficiary Form (July 10, 1996) contained a mistake – listing Defendant's contingent interest as 33 1/3% instead of 100% – and was rejected by MetLife. Def.'s Memo in Supp. of Denying Motion for Summ. J. at 10. The October 26, 1996 form not only contained someone else's handwriting, but someone else filled out Section 1, which is required to be filled out by the employee by the Plan's terms. Id. The decedent did not complete the top portion of the form, nor the percentages. Id.; citing Dep. of Sandra Katsoolis p. 18 and Dep. Suzanne Cugier 28-29. Defendant argues that because the forms are ambiguous, witnesses can testify to the intent of James Cugier to leave the GM life insurance to his spouse. Id.

Contracts of insurance are governed by the same rules of construction as other contracts. Allstate Ins. Co. v. Tozer, 392 F.3d 950, 953 (7th Cir. 2004); citing Bowers v.

Kushnick, 774 N.E.2d 884, 887 (Ind. 2002). Where a life insurance policy contains the right of the insured to change a beneficiary, such right must be exercised in the manner provided in such policy. Cook v. Equitable Life Assur. Soc. of U.S., 428 N.E.2d 110, 116 (Ind. App. 1981) (stating that if decedent "had wanted to change the beneficiary he had ample time and opportunity to comply with the policy requirements. Nothing in the record suggests otherwise.").

In this case, the parties agree that the policy required the execution of a written Beneficiary Designation Form in order to properly name a beneficiary to a life insurance policy.[10] Def.'s Depo. p. 85. The parties also agree that no one has come forward stating that he or she saw a written Beneficiary Designation Form that named the Defendant as the primary beneficiary. Def.'s Depo. p. 65 and 86. The only written Beneficiary Designation Forms known to be in existence name the Plaintiffs as the primary beneficiaries and the Defendant as the contingent beneficiary. (See Exhs. C and D to Pls.' Memo in Supp.; Def.'s Depo. at 65 and 86. Ultimately then, the parties' dispute is whether the decedent's failure to write "100%" next to the contingent beneficiary on the first form, and the fact that he allowed someone else to complete the beneficiary portion of the second form, results in both forms being ambiguous.

"Under Indiana contract law, interpretation of an unambiguous contract is a matter of law that can be resolved on summary judgment. Ambiguous contracts, on the other

[10] However, Defendant maintains that this written form could be amended by telephone or email communication with agents of MetLife.

hand, must be set before a trier of fact to ascertain the facts necessary to construe the contract." Automation By Design, Inc. v. Raybestos Products Co., 2006 WL 2636454, *3 (7th Cir. 2006) (discussing Indiana law) (internal citations omitted). When a court grants summary judgment it has necessarily determined that the contract is not ambiguous or that any existing ambiguity can be resolved without the aid of a factual determination. Perryman v. Motorist Mut. Ins. Co., 846 N.E.2d 683, 687 (Ind. Ct. App. 2006).

Even after drawing all reasonable inferences from the facts in favor of the Defendant, it is clear that under the First Beneficiary Form there is no ambiguity regarding the primary beneficiaries. Further, the fact that someone else–and all the evidence on record points to the conclusion that the "someone else" was an employee at GM–filled out the top portion of the Second Beneficiary Form does not make this form ambiguous. In the absence of evidence of foul play there is no reason to believe that this Second Beneficiary Form, signed by the Decedent, does not reflect the Decedent's intent. Thus, the Second Beneficiary Form is valid and controlling. If it were not valid, the First Beneficiary Form would control. Regardless, the result is the same: the Plaintiffs are the primary beneficiaries of the Decedent's life insurance policy under the Plan. No reasonable fact-finder could find for the Defendant and thus summary judgment is appropriate. See Shields Enterprises, 975 F.2d at 1294. For these reasons, Plaintiffs are entitled to judgment as a matter of law, declaring them to be the sole beneficiaries of the life insurance policy.

Conclusion

Plaintiffs' Motion for Summary Judgment [Doc. No. 30] is GRANTED; Defendant Julie Cugier's Motion to Deny Motion for Summary Judgment [Doc. No. 43] is DENIED; and Defendant Julie Cugier's Motion to Oppose Summary Judgment [Doc. No. 100] is also DENIED. In addition, Plaintiffs' Motion to Strike Affidavit in Support [Doc. No. 56] is GRANTED and Plaintiffs' Motion to Strike Affidavits of Larry Yoder and Wayna Marie Parker [Doc. No. 65] is DENIED. IT IS SO ORDERED.

Date: September 29, 2006

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Gregory R. Elder
BARKAN & ROBON
bar-rob@accesstoledo.com

G. Arlene Kline
arlene@indianaprobate.net

Marvin A. Robon
BARKAN & ROBON
bar-rob@accesstoledo.com

Thomas H. Vogtsberger
105 North Main Street
Suite C
Bowling Green, OH 43402